STATE v. JESSIE BIRDSEYE.[1]

October 30, 1936.

No. 31,017.

W. W. Gibson and A. M. Gunn, for appellant.

R. S. Wiggin, City Attorney, and Leo P. McHale, Assistant City Attorney, for the State.

[1] Reported in 269 N. W. 459.

232

STONE, JUSTICE.

Defendant was found guilty of disorderly conduct in violation of a Minneapolis ordinance. After judgment of conviction he moved for a new trial. He appeals both from the judgment and the order denying that motion.

The ordinance in question is the so-called "Disorderly Conduct Ordinance" and as far as here material declares [Minneapolis City Charter & Ordinances, 1872-1925, p. 760]:

"Any person or persons who shall make, aid, countenance or assist in making any noise, riot, disturbance or improper diversion, and all persons who shall collect in bodies or crowds in said city, for unlawful purposes or to the annoyance or disturbance of the citizens or travelers, shall, for each offense, on conviction before the municipal court of the city of Minneapolis, be liable to the same fine and punishment provided for in section one of this ordinance."

The whole argument for defendant is concisely summarized by his counsel as follows: The evidence does not support a conviction because "the acts complained of" do not "extend beyond an offense against one individual" and are not "of such a character as to either disturb, or have a tendency to disturb the community in general." A very brief statement of the evidence for the prosecution shows that position unfounded.

Defendant apparently is a young man just past his majority. On the evening of March 13, 1936, he had as invited guests in his automobile three high school boys ranging in age from 16 upwards. After purchasing a pint of whisky and a pint of gin at one of our ubiquitous, modern liquor stores, they went to a cafe where they obtained some ginger ale with which they mixed their liquor. Each consumed his share—approximately half a pint. They then proceeded to a beer tavern where they took on some beer. That was a bit too much for one of the boys. The resulting alimentary rebellion made it advisable to take him home. That done, his erstwhile companions, with defendant as the chauffeur, began following streetcars in a deliberate effort to "pick up" some girls. The first one accosted escaped without difficulty. But the second, encoun-

tered at the south end of the Nicollet avenue viaduct over Minnehaha Creek and Parkway, was less fortunate. One of the boys, as he admitted on the witness stand, "awfully ornery from the drinks," struck the young lady. Thereupon she "screamed," and the whole gang made their getaway in the car driven by defendant.

That outlines the picture, sketched rather clearly by the evidence. It is enough to show that, whatever the actual result of defendant's wrongdoing, it was calculated undeniably to bring about the disturbance of more than one individual and to create an "improper diversion" for many. Its capacity for disturbing the "community in general" was too obvious for comment.

It is no less than an affront to intelligence to argue that an automobile loaded with alcohol-charged adolescents, not to mention adults, is not, anywhere on our highways, an enemy of the public peace. It is all the more so when, as here, it becomes a pirate craft in search of loot such as that wanted by defendant and his companions on the night in question. The appeal is utterly lacking in merit.

Judgment and order affirmed.